*In re* ESTATE OF SIMPSON DRISKELL, JR. (Wilma Simpson Driskell, Jr., Petitioner-Appellant, v. First National Bank of Springfield, Guardian ·of the Estate, *et al.*, Respondent-Appellees).

Fourth District   No. 4—86—0523

Opinion filed March 19, 1987.

Gary L. Smith, of Douglas G. Brown, P.C., of Springfield, for appellant.

G. William Horsley, of Springfield, for appellees.

JUSTICE KNECHT delivered the opinion of the court:

Petitioner, Wilma Simpson Driskell, Jr., wife of Simpson Driskell, Jr., appeals the order of the circuit court of Sangamon County denying her motion to expunge all previous orders appointing guardians of the estate and the person as well as the order finding Simpson Driskell, Jr. (Driskell), to be under a legal disability due to mental illness. We affirm.

A brief explanation of Driskell's current legal status is necessary to understand petitioner's arguments. Driskell was found in 1930 by order of the county court of Sangamon County to be a feebleminded person and sent to live at the Lincoln State School and Colony as a private patient. On December 1, 1939, in the probate court of Sangamon County, Driskell was found to be incompetent and a conservator was appointed both for his person and his estate. Successor conservators, later renamed guardians, have served from 1939 to the present. The current guardian of the estate is the First National Bank of Springfield and the guardian of the person is John Ray, a distant cousin of Driskell.

For a time in the early 1970s Driskell was a patient of the Illinois Department of Mental Health at the McFarland Zone Center but received an absolute discharge from the department on June 10, 1974. He presently resides at Haven Convalescent Center in Springfield as a private patient, having been placed there several years ago by his guardian.

The petitioner contends Driskell must be released from guardianship both of his estate and his person due to the operation of section 3—907 of the Mental Health and Developmental Disabilities Code (Code) (Ill. Rev. Stat. 1985, ch. 91½, par. 3—907). This section provides:

"Any person who is under legal disability solely by reason of a court order adjudicating him mentally ill entered prior to January 1, 1964, shall be deemed to be a person under no legal dis-

ability 180 days from the effective date of this Act unless, prior to that date, a hearing is held pursuant to the provisions of the Probate Act of 1975, approved August 7, 1975, as now or hereafter amended, and a guardian is appointed."

Petitioner claims the 1930 adjudication of Driskell as feebleminded was an adjudication of mental illness requiring a review of his legal competency within 180 days of the effective date of the code, which was January 1, 1979. No such review was held for Driskell.

The 1930 adjudication which found Driskell to be feebleminded was entered pursuant to "An Act to better provide for the care and detention of feebleminded persons" (Ill. Rev. Stat. 1929, ch. 23, par. 346 *et seq.* (approved June 24, 1915)). Section 1 of the Act stated:

"The words 'feeble-minded person' in this act shall be construed to mean any person afflicted with mental defectiveness from birth or from an early age, so pronounced that he is incapable of managing himself and his affairs, or of being taught to do so, and requires supervision, control and care for his own welfare, or for the welfare of others, or for the welfare of the community, who is not classifiable as an 'insane person' ***." (Ill. Rev. Stat. 1929, ch. 23, par. 346.)

That act was clearly distinguishable from legislation then in existence which provided for commitment and detention of people found to be "insane." (Ill. Rev. Stat. 1929, ch. 85, par. 1 *et seq.*) That legislation stated, in part:

"Provided, that no person, idiot from birth, or whose mental development was arrested by disease or physical injury occurring prior to the age of puberty, and no person who is afflicted with simple epilepsy shall be regarded as insane, unless the manifestations of abnormal excitability, violence or homicidal or suicidal impulses are such as to render his confinement in a hospital or asylum for the insane a proper precaution to prevent him from injuring himself or others."

In 1930, the legislation concerning the commitment of the insane also provided for the appointment of a conservator as a part of the proceedings for a determination of insanity. (Ill. Rev. Stat. 1929, ch. 85, par. 12.) Conservators could then also be appointed pursuant to "An Act to revise the law in relation to incompetents, idiots, lunatics, drunkards and spendthrifts." (Ill. Rev. Stat. 1929, ch. 86, par. 1 *et seq.*) Section 2 of that act set forth the procedure for appointing conservators and stated that, in lieu of a jury trial, "if a [respondent] has been adjudged insane or feebleminded in the county court," a conservator may be appointed without further inquiry upon presentation of

a certified copy of such a decree. This legislation was in force when Driskell was placed under conservatorship in December 1939. (See Ill. Rev. Stat. 1939, ch. 86, par. 2; 1939 Ill. Laws 81 (sec. 346(2)). The record does not contain that order but, presumably, the order was based on the presentation of a certified copy of the order adjudicating Driskell to be feebleminded.

The aforementioned legislation providing for summary proceedings was repealed effective January 1940 (see 1939 Ill. Laws 80-81 (secs. 344, 345, 346(2)); Ill. Rev. Stat. 1939, ch. 3, par. 2), and superseded by sections 113(a) and (b) of the Probate Act of 1939 (Ill. Rev. Stat. 1939, ch. 3, pars. 265(a), (b); compare 1939 Ill. Laws 80 (Probate Act, sec. 345)). That section permitted summary proceedings only when the prior adjudication found the respondent to be "insane." Subsequently, under the terms of sections 113(a) and (b), a prior adjudication of mental illness became the basis for summary proceedings. (Ill. Rev. Stat. 1943, ch. 3, pars. 265(a), (b).) At that time, legislation had become effective which defined the term "mentally ill." (Ill. Rev. Stat. 1943, ch. 91½, par. 1—1.) Then sections 113(a) and (b) were amended effective January 1, 1952, to also include prior adjudications of mental deficiency and feeblemindedness as a basis for summary appointments for conservators. (Ill. Rev. Stat. 1951, ch. 3, pars. 265(a), (b).) Eventually, the procedure for appointing a conservator upon the basis of a prior adjudication concerning the status of the respondent was abolished. Ill. Rev. Stat. 1965, ch. 3, par. 113; see generally Ill. Ann. Stat., ch. 110½ Appendix, at 309-505 (Smith-Hurd 1978).

In speaking of persons under disability "solely by reason of a court order," section 3—907 is clearly referring to those who have been subject to the summary proceedings we have discussed and which were apparently used to place Driskell under conservatorship. However, when it then limits its operation to those who were declared mentally ill in such a proceeding, it has no reference to Driskell, who was adjudicated to be feebleminded.

The trial court correctly noted that, historically, the legislature distinguished those persons who were known as feebleminded, mentally retarded, mentally deficient or otherwise developmentally disabled from those labeled lunatic, insane and mentally ill in regard to confinement and treatment for those persons. (See Ill. Rev. Stat., ch. 91½, from 1943 to present.) The present Mental Health and Developmental Disabilities Code clearly separates procedures for the admission, transfer and discharge of the mentally ill (Ill. Rev. Stat. 1985, ch. 91½, par. 3—100 et seq.) from the developmentally disabled (Ill. Rev. Stat. 1985, ch. 91½, par. 4—100 et seq.). The same distinction

and separation is evidenced by the legislation, apparently used here, authorizing the placement of a person under conservatorship. We agree with the trial court. Section 3—907 was not intended to and does not apply to one found to be feebleminded because "feebleminded" and "mentally ill" are terms that had and continue to have independent and distinct meanings.

Of equal import, the order appointing a conservator for Driskell in 1939 was a proceeding in the probate court. As such, the appointment of Driskell's conservators, now guardians, is governed by the Probate Act of 1975. (Ill. Rev. Stat. 1985, ch. 110½, par. 1—1 et seq.) This Act was amended, also effective January 1, 1979, to include a provision for the termination of adjudication of disability or revocation or modification of guardianship, "if the ward's capacity to perform the tasks necessary for the care of his person or the management of his estate has changed so as to warrant such termination, revocation or modification." (Ill. Rev. Stat. 1985, ch. 110½, par. 11a—20.) This procedure continues to be available to petitioner.

We conclude section 3—907 of the Mental Health and Developmental Disabilities Code does not govern the case of Simpson Driskell, Jr., for two reasons. First, Driskell was not adjudicated to be mentally ill. Second, the language of section 3—907 evidences an intent to *appoint guardians* for those adjudicated mentally ill prior to 1964 by requiring not only a hearing but the appointment of a guardian—or else legal competency is deemed restored. Driskell already has two guardians as ordered by the probate court and their removal or modification of their duties is provided for in the Probate Act.

Affirmed.

GREEN and LUND, JJ., concur.